IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CANDACE TYLER,<br><br>             Plaintiff,<br><br>     v.<br><br>CITY OF MCKEESPORT,<br><br>             Defendant. | 2:22-CV-01092-CCW |

## OPINION

Plaintiff Candace Tyler claims that her former employer, Defendant City of McKeesport, discriminated against her on the basis of her race (African American) and gender (female) by terminating her, and retaliated against her for engaging in protected activity, in violation of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act ("PHRA"). McKeesport has moved for summary judgment on all claims. ECF No. 27. For the reasons that follow, the Court will grant McKeesport's Motion.

I.  **Material Facts**

The following facts are drawn from the parties' Concise Statements of Material Facts, ECF Nos. 29, 31, 35, and are undisputed unless otherwise noted.

In February 2008, the McKeesport Police Department hired Ms. Tyler as a full-time police officer. ECF No. 31 ¶ 2. During all relevant times, Ms. Tyler worked under the command of the following individuals in the McKeesport Police Department: Chief of Police Adam Alfer, Assistant Chief of Police Mark Steele, Lieutenant Terry Brownfield, and Sergeant Ryan Miller.

1

ECF No. 31 ¶¶ 19–22. In the borough of McKeesport, Mayor Cherepko has "full charge and control over the Chief of Police and the police force." ECF No. 31 ¶¶ 17, 18.

The parties agree that, sometime in 2021, Ms. Tyler spoke to Assistant Chief Steele regarding a promotion, and a short conversation ensued. ECF No. 35 ¶¶ 96, 97. According to Ms. Tyler, Assistant Chief Steele responded that they were "not promoting any Black females in this Department." ECF No. 31 ¶ 97. Assistant Chief Steele denies making this statement. ECF No. 35 ¶ 97. Ms. Tyler testified that no one else was present to hear the conversation, and she does not remember when in 2021 it occurred. ECF No. 30, Ex. A, Tyler Dep. 85:2-10, 86:9-16. Ms. Tyler also testified that she does not recall any instances of officers making similar comments. ECF No. 30, Ex. A. Tyler Dep. 88:12-21.

The parties agree that, after this exchange, Ms. Tyler drafted a grievance, dated March 15, 2021, and titled it "Unfair Departmental Promotions." ECF No. 35 ¶ 98. In this grievance, she alleged that she had "not been given any opportunities to advance in seniority." ECF No. 35 ¶ 98. Ms. Tyler testified that she delivered the grievance to Chief Alfer's office on March 17, 2021—as evidenced by her handwritten notation on the grievance form. ECF No. 31 ¶ 98. McKeesport, however, denies that Chief Alfer received the grievance, ECF No. 34 ¶ 98, and Ms. Tyler testified that she is not sure whether he received it, ECF No. 30, Ex. A, Tyler Dep. 145:15-22. Further, the parties agree that Ms. Tyler never received a response to the grievance. ECF No. 35 ¶ 99.

Ms. Tyler testified that after she filed the March 15 grievance, she began facing harassment and retaliation—an allegation that McKeesport denies. ECF Nos. 31 ¶ 102; 35 ¶ 102. As an example, she points to Sgt. Miller removing her from patrol details and putting her on the Warden's desk more often. ECF No. 35 ¶ 103. McKeesport acknowledges that Ms. Tyler worked the Warden's desk but denies that the assignment was a form of retaliation. ECF No. 35 ¶ 103. The

parties agree that all officers work the Warden's desk, and it does not affect their pay. ECF No. 30, Ex. A, Tyler Dep. 171:14–72:2. As another example of harassment, Ms. Tyler points to an explicit photograph she received in her mailbox that depicted a fellow male officer exposing his genitals to the camera. ECF No. 31 ¶ 93. The parties agree that Ms. Tyler received this explicit photograph but dispute the timeline. ECF Nos. 31 ¶ 93; 35 ¶ 93. Ms. Tyler testified that she first discovered this photograph in 2010, but at some point in 2021, it resurfaced and was placed in her mailbox. ECF No. 31 ¶¶ 93, 95; 30, Ex. A, Tyler Dep. 73:23-25. McKeesport, however, contends that Ms. Tyler only received this photograph in 2010—not in 2021. ECF No. 35 ¶ 93. Ms. Tyler further testified that she showed this picture to Lt. Brownfield and Sgt. Miller, who allegedly said he "would take care of it," but she did not discuss the photograph with anyone else. ECF No. 36, Ex. A, Tyler Dep. 63:1–64:7.

The parties agree that Ms. Tyler then drafted a second grievance, dated July 20, 2021, and titled "Hostile Work Environment," in which she alleges that she "has been subjected to a hostile work environment" from Sgt. Miller's "personal attacks" and "bias actions." ECF Nos. 30, Ex. A at 30; 35 ¶ 104. The parties further acknowledge that the grievance does not mention the explicit photograph Ms. Tyler received. ECF Nos. 35 ¶ 104; 36, Ex. A, Tyler Dep. 67:25–68:12. The parties, however, dispute Ms. Tyler's reasons for drafting the grievance and whether she actually filed it. ECF Nos. 31 ¶ 104; 35 ¶ 104. Ms. Tyler testified that she drafted the grievance because Sgt. Miller retaliated against her when he started removing her from patrol duties to put her on the Warden's desk, and because of the graphic photograph she received. ECF No. 31 ¶ 104. McKeesport, however, disputes that Ms. Tyler drafted the grievance to challenge retaliatory conduct; instead, it contends that her sole purpose for drafting the grievance was her discontent with working at the Warden's Desk. ECF No. 35 ¶ 104. Ms. Tyler contends that she delivered

the grievance to Chief Alfer's office on July 22, 2021, as evidenced by her handwritten notation at the top of the grievance form. ECF No. 31 ¶ 104. McKeesport denies that Ms. Tyler filed this grievance and that Chief Alfer ever received it. ECF No. 35 ¶ 104. Ms. Tyler acknowledges that no one responded to the grievance, and she does not know whether Chief Alfer actually received it. ECF Nos. 30, Ex. A at 30, Tyler Dep. 146:16–147:17; 31 ¶ 104.

The parties agree that, between September and October 2021, commanding officers filed multiple incident reports against Ms. Tyler for violations of department policy. ECF No. 35 ¶ 105. Ms. Tyler admits to engaging in the conduct alleged in the following incident reports. ECF No. 31 ¶¶ 24–38. In the first incident, on September 8, 2021, Ms. Tyler did not respond to a dispatch call because her shift was about to be over. ECF No. 31 ¶¶ 25, 26. On September 14, while serving a Protection from Abuse eviction, Ms. Tyler failed to inform her fellow officers that the subject was known to possess a weapon. ECF No. 31 ¶ 27. On September 22, Ms. Tyler responded late to an active domestic situation and did not assist the other officer when she arrived; the other officer reported that Ms. Tyler put his life in danger by taking so long to respond. ECF No. 31 ¶¶ 28–31. Ms. Tyler does not dispute that she arrived late or that she put the officer's life in danger. ECF No. 31 ¶¶ 29–31. Additionally, an incident report was filed against Ms. Tyler for failing to properly check the access doors to a building during a search on September 23. ECF No. 30, Ex. A, at 41–42. On October 4, a citizen called the Department and asked to speak with Ms. Tyler regarding the filing of a police report, but Ms. Tyler answered the phone and lied to the citizen, telling them she was not available. ECF No. 31 ¶¶ 32, 33. On October 5, a hospital called the Warden's desk and requested that an officer come speak with a rape victim; Ms. Tyler answered the call but lied and said no officers were available. ECF No. 31 ¶¶ 34–38.

Based on these incident reports, Mayor Cherepko, Chief Alfer, and Assistant Chief Steele scheduled a <u>Loudermill</u> hearing for October 15, 2021. ECF No. 31 ¶¶ 39, 40. During the hearing, Assistant Chief Steele reviewed each incident report with Ms. Tyler and gave her an opportunity to respond. ECF No. 31 ¶ 47. McKeesport contends that during the hearing, Ms. Tyler either denied each incident or remained silent—even when Mayor Cherepko begged her to be truthful. ECF No. 29 ¶¶ 48–54. Ms. Tyler, however, asserts that she was truthful during the hearing regarding one incident: she claims she admitted during the hearing that she lied to a citizen during a phone call. ECF No. 31 ¶ 48.

Based on the hearing, Chief Alfer and Mayor Cherepko decided to terminate Ms. Tyler's employment. ECF No. 31 ¶ 55. Both Mayor Cherepko and Chief Alfer were the ultimate decisionmakers regarding Ms. Tyler's termination. ECF No. 31 ¶ 23. Mayor Cherepko testified that his biggest issue was Ms. Tyler's lying, and Chief Alfer emphasized that Ms. Tyler could not be trusted after the hearing. ECF No. 31 ¶¶ 56, 59. On October 19, 2021, they sent Ms. Tyler a termination letter which set forth the reasons for her dismissal, including gross insubordination, dereliction of duties, conduct unbecoming of an officer, actions placing other officers at risk, and dishonesty. ECF No. 31 ¶ 63.

McKeesport now moves for Summary Judgment on all of Ms. Tyler's claims. ECF No. 27. With briefing complete, the Motion is now ripe for adjudication.[1]

## II. Legal Standard

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] The Court has jurisdiction over the Title VII claims, which raise federal questions, under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the PHRA claims under 28 U.S.C. § 1367.

law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (alteration omitted) (quoting *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with the moving party regardless of which party would have the burden of persuasion at trial." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (internal quotation marks omitted). Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87. Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted). But, while the court must "view the

facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence…." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted). Instead, "there must be evidence on which the jury could reasonably find for the non-movant." *Id.* (cleaned up).

### III.  Discussion

McKeesport seeks summary judgment on two grounds. First, it argues that Ms. Tyler has failed to make out a prima facie case of race or gender discrimination or retaliation under Title VII and the PHRA. ECF No. 28 at 4, 14. Second, McKeesport asserts that even if Ms. Tyler has made out a prima facie case, she has failed to establish that McKeesport's legitimate non-discriminatory reasons for terminating her were pretextual. ECF No. 28 at 13, 17. The Court will first address the applicable legal framework, then it will address each argument in turn.

#### A.  Legal Framework

The parties agree that the familiar *McDonnell Douglas* burden-shifting framework applies to Ms. Tyler's disparate treatment and retaliation claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Burton*, 707 F.3d at 425–27; ECF Nos. 28 at 4; 32 at 2.

The *McDonnell Douglas* analysis has three steps. First, the plaintiff must point to evidence sufficient to satisfy the elements of a prima facie case of employment discrimination or retaliation, thereby creating an inference that her employer acted unlawfully. *See Burton*, 707 F.3d at 426. Next, the defendant must rebut this inference by articulating a legitimate, non-discriminatory reason for its actions. *See id.* The burden of production then shifts back to the plaintiff, who, in order to survive summary judgment, must provide evidence from which a jury could reasonably infer that the defendant's proffered explanation for its conduct is, in reality, pretext for unlawful

discrimination or retaliation. *See id.* at 426–27; *see also Fuentes v. Perskie*, 32 F.3d 759, 763–64 (3d Cir. 1994) (setting forth burden shifting framework under *McDonnell Douglas* at summary judgment). Although the *McDonnell Douglas* framework contemplates a shifting burden of *production*, the burden of *persuasion* always remains with the plaintiff. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

Finally, because the Third Circuit has found that "[c]laims under the PHRA are interpreted coextensively with Title VII claims," we will address Ms. Tyler's parallel federal and state-law claims in tandem. *Atkins v. Lafayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).

### B.    Defendant is Entitled to Summary Judgment on Ms. Tyler's Disparate Treatment Claims

Ms. Tyler contends that McKeesport discriminated against her on the basis of her race and gender when it terminated her on October 19, 2021.[2] ECF No. 2. McKeesport asserts that Ms. Tyler cannot establish a prima facie case of race or gender discrimination, and even if she could, she cannot show that McKeesport's reasons for firing her were a pretext for discrimination. ECF No. 28.

#### 1.    Ms. Tyler Cannot Establish a Prima Facie Case.

To prove a prima facie case of employment discrimination, a plaintiff must show that (1) she is a member of a protected class, (2) that she was qualified for the position she sought to attain or retain, (3) that she suffered an adverse employment action, and (4) the action occurred under circumstances that support an inference of intentional discrimination. *In re Tribune Media Co.*,

---

[2] Although, in her briefing, Ms. Tyler mentions for the first time the failure to promote her as a potential adverse action, the Court concludes that the only adverse action properly before it regarding her disparate treatment claims, is her October 2021 termination. This is because in her Complaint, Ms. Tyler does not raise the failure to promote as an adverse action regarding her disparate treatment claims. ECF No. 2 ¶¶ 39, 40. Additionally, McKeesport does not discuss the failure to promote with regard to this claim. ECF No. 27.

902 F.3d 384, 402 (3d Cir. 2018).  McKeesport only challenges the fourth element.  ECF No. 28 at 5, n. 1.

> To show an inference of intentional discrimination, a plaintiff may either:
>
> > (1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between [her] membership in a protected class and the adverse employment action.

*Drummer v. Hospital of University of Pennsylvania*, 455 F. Supp. 3d. 160, 168 (E.D. Pa. 2020) (citing *Greene v. Virgin Islands Water & Power Authority*, 557 F. App'x 189, 195 (3d Cir. 2014)).

Here, to create an inference of intentional discrimination, Ms. Tyler points to evidence of a comparator and to circumstantial evidence—namely, a discriminatory comment, harassing conduct, and the promotion of officers outside of her protected class.  ECF No. 31 ¶¶ 93–97, 101, 110.  McKeesport contends, however, that the purported comparator is not similarly situated to Ms. Tyler and that her circumstantial evidence is not sufficient to show a causal nexus between her firing and her membership in a protected class.  ECF No. 28 at 5–11.

Ms. Tyler proffers Officer Jerry Athans as a comparator.  In support, she contends that McKeesport's purported reason for terminating her was that she endangered other officers' lives, ECF No. 32 at 7, and that Officer Athans did the same when he failed to properly search and handcuff a suspect and that suspect later pulled out a loaded firearm and shot Officer Athans multiple times.  ECF No. 35 ¶ 110.  Because this officer—a Caucasian male—was not formally disciplined after placing officers' lives at risk, ECF No. 35 ¶ 110, unlike Ms. Tyler, she asserts that this disparate treatment gives rise to an inference of discrimination.  ECF No. 32 at 11.  Ms. Tyler and Officer Athans, however, are not similarly situated because Ms. Tyler was terminated for multiple reasons, including placing officers' lives at risk, gross insubordination, dereliction of

duties, conduct unbecoming of an officer, and blatant dishonesty—while Officer Athans is only alleged to have placed officers' lives at risk. ECF No. 35 ¶ 110; *See Dennison v. Indiana University of Pennsylvania*, No. 20-cv-1563, 2022 WL 3213657, at *9 (W.D. Pa. Aug. 9, 2022) (Horan, J.) (explaining that comparators must be "sufficiently comparable," and they are not so when the facts and circumstances leading to the discipline are different for the comparators). Further, McKeesport stressed that Ms. Tyler's dishonesty was a major contributing factor to her termination, ECF No. 31 ¶ 56, while there are no allegations that Officer Athans was dishonest, ECF No. 35 ¶ 110. Because Ms. Tyler fails to point to an officer who engaged in misconduct similar to hers but received different discipline, she cannot show a similarly situated comparator.

Turning next to the circumstantial evidence, the Court finds that Ms. Tyler has failed to point to evidence that could establish a causal nexus between her firing and her membership in a protected class. To support such an inference of discrimination, Ms. Tyler points to a nude photograph of a male colleague that was placed in her mailbox and a statement allegedly made by Assistant Chief Steele that McKeesport is "not promoting any Black females in this Department." ECF No. 31 ¶¶ 93, 97. Such evidence, however, does not serve as a causal nexus, and instead, amounts only to a "collection of stray remarks and unconnected, coincidental circumstances..." *Greene*, 557 F. App'x at 196.

First, there is no evidence in the record that the decisionmakers involved in Ms. Tyler's termination—Chief Afler and Mayor Cherepko—were involved with or aware of the photograph or Assistant Chief Steele's alleged discriminatory comment. *See generally* ECF Nos. 29, 31, 35. Indeed, Ms. Tyler testified that, aside from Lt. Brownfield and Sgt. Miller, she told no one else about the photograph and no one else was present to hear the comment allegedly from Assistant Chief Steele. ECF No. 30, Ex. A, Tyler Dep. 87:2-17; ECF No. 36, Ex. A, Tyler Dep. 63:8-10.

Without showing that the decisionmakers were aware of the discriminatory conduct, Ms. Tyler cannot establish a causal connection between her firing and her membership in a protected class. Second, Ms. Tyler cannot establish when she received the graphic photograph nor when Assistant Chief Steele allegedly made the discriminatory comment, making any connection to her firing more tenuous. ECF No. 30, Ex. A. Tyler Dep. 73:1-25, 85:2-10. Finally, Ms. Tyler does not recall any instances of officers making similar comments, rendering Assistant Chief Steele's comment a stray remark and not a causal nexus. ECF No. 30, Ex. A. Tyler Dep. 88:12-21. Therefore, given that the photograph and comment are two isolated instances unconnected temporally to Ms. Tyler's firing, and that there is no evidence the two decisionmakers were aware of these incidents, there is insufficient evidence from which a reasonable jury could find a causal connection between Ms. Tyler's termination and her membership in a protected class. *See Dennison*, 2022 WL 3213657, at *10 ("Stray remarks by non-decisionmakers . . . are rarely given great weight, particularly if they were made temporally remote from the date of [the termination].").

Therefore, because Ms. Tyler has failed to point to a similarly situated comparator who was treated more favorably, and because she has not established a causal nexus between her termination and membership in a protected class, no reasonable juror could find an inference of intentional discrimination. Accordingly, Ms. Tyler has failed to establish a prima facie case of race and gender discrimination.

### 2. Ms. Tyler Cannot Establish McKeesport's Proffered Reasons were a Pretext for Discrimination.

Even if Ms. Tyler could establish a prima facie case of discrimination, she cannot meet her burden to show that McKeesport's proffered reasons for Ms. Tyler's termination were a pretext for discrimination. Initially, the Court finds, and Ms. Tyler does not dispute, that McKeesport has proffered several legitimate, non-discriminatory reasons for terminating Ms. Tyler's employment:

11

namely, gross insubordination, dereliction of duties, conduct unbecoming of an officer, actions placing other officers at risk, and dishonesty. ECF Nos. 28 at 11–13; 32 at 6–7.

To show an employer's proffered reasons for firing an employee were a pretext for discrimination, a plaintiff must offer some direct or circumstantial evidence from which a factfinder could reasonably (i) disbelieve the employer's stated reasons for the firing, or (ii) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *In re Tribune Media Co.*, 902 F.3d at 402; *Fuentes v. Perskie*, 32 F.3d at 764. A plaintiff can show that an invidious discriminatory reason was more likely than not a motivating factor where "the employer treated other… similarly situated persons not of [her] protected class more favorably." *In re Tribune Media Co.,* 902 F.3d at 403.

Here, as noted above, Ms. Tyler has failed to point to a similarly situated comparator because Officer Athans did not engage in misconduct similar to that which led to Ms. Tyler's firing. *See Norris v. NLMK PA LLC*, No. 22-3186, 2024 WL 1209747, at *7 (3d Cir. Mar. 21, 2024) (affirming that another employee in the same department as plaintiff was not a comparator where that employee was accused of only one policy violation and plaintiff was accused of multiple). Further, Ms. Tyler cannot show that a factfinder could reasonably disbelieve McKeesport's stated reasons for firing her, given that she acknowledges she engaged in the underlying misconduct and violations of department policy. ECF No. 31 ¶¶ 25–38, 67–70. For example, Ms. Tyler acknowledges she ignored or arrived late to dispatch calls, did not assist fellow officers, lied to citizens, and failed to send officers to a hospital to speak with a rape victim. *Id.*

Therefore, even if Ms. Tyler had established a prima facie case of discrimination, she cannot point to evidence from which a reasonable jury could find that McKeesport's proffered reasons for firing Ms. Tyler were a pretext for discrimination.

### C. Defendant is Entitled to Summary Judgment on Ms. Tyler's Retaliation Claim.

Ms. Tyler contends that McKeesport disciplined her, failed to promote her, and ultimately terminated her employment in retaliation for two grievances she filed. ECF No. 2. McKeesport, in its Motion, asserts that Ms. Tyler cannot establish a prima facie case of retaliation, and even if she could, she cannot establish pretext. ECF No. 28.

#### 1. Ms. Tyler has Failed to Make Out a Prima Face Case.

To establish a prima facie case for retaliation, a plaintiff must show that (a) she engaged in a protected activity, (b) the employer took materially adverse action against her, and (c) there was a causal connection between the protected activity and the employer's action. *Young v. City of Phila. Police Dept.*, 651 F. App'x 90, 95 (3d Cir. 2016) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–42 (3d Cir. 2006)). Here, Ms. Tyler contends that the two grievances she filed are protected activity. ECF No. 32 at 5–6. McKeesport responds that these grievances do not constitute protected activity because they are vague, generalized complaints about the workplace and do not raise complaints of discrimination based on a protected ground under Title VII. ECF No. 28 at 15–17.

The anti-retaliation provision of Title VII protects "those who oppose discrimination made unlawful by Title VII." *Moore*, 461 F.3d at 341. Therefore, "only complaints about discrimination prohibited by Title VII—discrimination based on race, color, religion, sex, or national origin—constitute protected activity." *Qin v. Vertex, Inc.*, No. 23-1031, 2024 WL 1920379, at *27 (3d Cir. May 2, 2024). "General complaints of unfair treatment are not." *Id.* Protected activity includes "informal protests of discriminatory employment practices, including making complaints to management," so long as they are not equivocal or vague. *Moore*, 461 F.3d at 341–43.

13

Here, the Court finds that the record contains insufficient evidence from which a reasonable factfinder could conclude that Ms. Tyler engaged in protected activity. Ms. Tyler's first grievance, dated March 15, 2021, makes no mention of discrimination on grounds prohibited by Title VII. ECF No. 30, Ex. A at 60. Instead, it states that the complaint is "on behalf of the unfair promotions," and that Ms. Tyler "has not been given any opportunities to advance in seniority." *Id*. Because this grievance does not contain any mention of discrimination or a protected ground under Title VII, the Court finds that it does not constitute protected activity. *See Abney v. SEPTA*, No. 22-1351, 2023 WL 6878745, at *3 (3d Cir. Oct. 18, 2023) (affirming grant of summary judgment because plaintiff's complaints were not protected activity as they "did not attribute [plaintiff's] allegedly unfair treatment to discrimination on any protected ground"); *Wiggins v. Universal Protection Services LLC*, No. 22-1491, 2022 WL 4116912, at *3 (3d Cir. Sept. 9, 2022) (affirming that a formal written complaint to management regarding generalized disrespectful behavior was not protected activity because it contained no mention of discriminatory employment practices).

Ms. Tyler's second grievance, dated July 20, 2021, alleges that Ms. Tyler "has been subjected to a hostile work environment" as well as "personal attacks" and "bias actions" by Sgt. Miller. ECF No. 30, Ex. A at 30. This grievance contains only vague and generalized references to bias and a hostile work environment, and it does not link the conduct to a protected ground under Title VII. *See Barber v. CSX Distribution Services*, 68 F.3d 694, 701–02 (affirming that, in an age discrimination case, the plaintiff did not engage in protected activity because a grievance letter he sent was "just too vague" and a "general complaint of unfair treatment does not translate into a charge of illegal *age* discrimination."); *Paradisis v. Englewood Hosp. Med. Ctr.*, 680 F. App'x 131, 138 (3d Cir. 2017) ("The mere mention of discrimination… does not transform a

general grievance into opposition to unlawful activity under Title VII."). Similarly, the mere mention of bias or a hostile workplace in Ms. Tyler's July 20 grievance is insufficient to constitute protected activity.

Because Ms. Tyler cannot point to evidence in the record from which a reasonable factfinder could conclude that she engaged in protected activity, Ms. Tyler cannot establish a prima facie case of retaliation and Defendant is entitled to summary judgment on her retaliation claim.

### IV. Conclusion

For the foregoing reasons, Defendant McKeesport's Motion for Summary Judgment will be GRANTED. Accordingly, Ms. Tyler's Title VII claims and PHRA claims will be dismissed, and judgment will be entered in McKeesport's favor.

DATED this 8th day of May, 2024.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record